The next case is United States v. Adams. May I please have the court? Can I start off by repeating the joy of my former counsel expressed at being here again? And for those of us who do criminal law, being in this gorgeous courtroom arguing in a reasoned way over cases reminds us that we're members of a learned profession, which sometimes in the hurly-burly of the criminal world we tend to forget. So I'm really happy to be back here. There's been a couple of developments that the court probably is aware of and that I'll tell you about anyway. There's a case called U.S. v. Gibson presently pending. It was argued November 22, 2021. Their decision was issued at least as far as this morning goes, I checked. It's crazy to try to predict what appellate judges are going to do, but it's pretty clear that the panel in that case is going to kind of issue a comprehensive decision concerning the most interesting issue that I present, that is, the various drug schedules. And you may wish to wait for that decision. There's another case, United States v. Lucas, that's 19-3937, that was decided by a summary order. That's a terrible case for me, but it's a summary order, so it has no precedential value. Mr. Donovan, since you bring up Gibson, a thought that I had about this case, and I'd like you to help me out with this and give your view on it. What the Gibson case already tells us, and I don't think there's really much dispute about this, is that as of the time that this agreement was made, the question whether the match between the state and federal law had to exist at the time of the crime, at the time of the original sentencing, at the time of the plea, or at the time that a court is later considering it, is an open question. You'd agree with that, right? No, no, no. No, it's not an open question. Because I knew it was done on plain error, if I agree with that. Well, that's where I'm going. But that's not the sole reason. I hear what you're saying, of course. But why isn't it an open question if we would have to wait for the Gibson panel to decide? If we had to decide the answer to that question, of course, under our internal rules, we would have to wait for that panel because they have precedence. But this is an issue that could have been litigated in this case, as many issues could be litigated. And when a party signs a plea agreement stipulating to this and agreeing to that and limiting its exposure in certain ways and accepting exposure in other ways, isn't the whole point of that agreement giving up the right to litigate all of the hundreds of issues that you could litigate? Yep, yep. And here's how, with respect to, your question kind of changed as it went along. With respect to whether it should have been clear to the district court, whether it's clear error, Townsend, the case that talks about another New York statute, was decided after this case. So that would kind of indicate, at first glance, that, yeah, it wasn't clear. On the other hand, Shepard, that's a Connecticut case. Shepard does exactly what Townsend does and what we're asking you to do in this case and what they're asking you to do in Gibson, and that is they take a look. This court compares the Connecticut list of controlled substances with the federal list of controlled substances. So what I say is, after Shepard, it was absolutely clear that anywhere in the Second Circuit, if you're in a drug case, you compare the previous conviction to, you compare the list of controlled substances against the federal list of controlled substances in order to determine. So that's why I say it's clear. But as of what time? Well, once Shepard was decided, and that was 10 years ago, maybe? That's not an old case, but it was a long time before the sentencing in this case. So that's why I say it was clear. I'm on the Gibson panel. I don't know that it was all that clear. Yeah, well, that's all I can say. The question is, really, was there fair ground for litigation of this? So I'm not focused on exactly the plain error question. I'm focused on this is a plea agreement. The question is whether the plea agreement should be enforced. And there are many instances in which there is, there are potentially different answers to a question. And the parties agree to say, let's call it this or let's call it that, because the interest in settling the case is greater. So I'm just having trouble understanding why we could say it's a mutual mistake here, when it's really a question that has been litigated since in a variety of cases. They chose not to litigate it. So let me give an example, and maybe this will illustrate my response to this. Suppose a party said, suppose we just have a plea agreement that says nothing about the sentencing guideline range, says nothing about prior convictions, but it only says, as this one did, I won't take an appeal so long as I get sentenced to less than I think it was 365 months. I won't take an appeal. No matter how the judge decides it, I won't take an appeal. I think your question fits that case. Suppose we have a case, though, in which the parties agree that there's a mandatory minimum of 20 years, and they're wrong, and they're wrong. I think in that case, because there's a mutual mistake, they can ask you to reform the contract to take that out. So long as they're wrong, I mean, if you come down or the other panel comes down against me on this, then there's nothing wrong. I'm out. Agreed. But I think, you know, I just think this is an application of contract law. But let's go back to that, though. In terms of reforming the contract, it's one thing if you were coming and saying, we all made a mistake in entering this agreement, so the agreement is void in effect because we were both operating under a misapprehension. But you're saying that your client should still get the benefits of the plea agreement, right? You don't want the plea back. You want the entire rest of the agreement to be in place, except that the sentencing guidelines should be calculated differently. What about the government's mistake? They made a mistake, too, you say. Right. And on the basis of that mistake, they gave something to your client. You're right. On the basis of that mistake, your client gave something to the government. Why does your guy get it back and they don't? You're absolutely right. You're absolutely right. But that's what happens when you reform a contract. Suppose Judge Livingston hired me to paint it like Tom Sawyer. I'm going to paint her fence. And the contract says it's 100 square feet, 10 bucks a square foot, and it turns out it's 150. But I'm already there, so I paint the whole thing. And I ask her to give me $10, and Judge Livingston, being tight with the buck, won't give it to me. I ask you to reform it. You might give me the 10 bucks. If you're a New York judge and you're deciding a New York case, you might give me the 50 bucks. You might say, well, you already had your painting and stuff there. We'll give you 50 minus 30, so we'll give you 20 extra. You'll reform the contract. You'll rework it in order to make sure the fairness comes out. And I might get an advantage from that, and Judge Livingston might not. But it's a situation in which the contract should be reformed. No, no, no. That mistake goes to the heart of the contract. But moving on beyond contract, we've said in our jurisprudence that a mutual mistake doesn't void a plea agreement, right? We said that in RGGI. No, no, what you say. Concerning the proper guidelines range is an insufficient basis to void a plea agreement. That's a quote. But your argument, then, is the character of this mistake is different from the other mistakes that we've said. Even if the parties, you know, made a mistake, that's not a sufficient basis generally. Why is this mistake different? Well, but isn't what I'm saying a little bit different? These other cases all say if this is a mutual mistake, we should, I think you said void, void the contract and start all over again. I'm not asking for that. I'm just asking for a recognition. I don't think any of you, Kate, I think this is kind of an imaginative argument you've never dealt with before, that you can reform, reform. I got it. I got some time for Rubo. Yep. You can remove the mask. Thank you. Good morning. May it please the court. Catherine Gregory, Assistant U.S. Attorney representing the United States. This court should enforce the appellate waiver and affirm the sentence in its entirety. A waiver of the right to appeal is presumptively enforceable even in the face of procedural errors like those now alleged by Mr. Adams. And this case does not fall within any of the circumscribed exceptions to that general presumption. For example, he is not arguing that the government breached the agreement in any way. He does not claim that he was sentenced outside the range for which he bargained. He's not saying that he was sentenced pursuant to any constitutionally impermissible factors like race or gender. And as he noted, he's not even asking to withdraw this appeal. He wants, or withdraw his plea rather, he wants the benefit of this plea agreement without being held to its terms. Terms that are specifically written to anticipate the potential for errors like those he now raises. It's written that it applies, quote, notwithstanding the manner in which the court determines the sentence, end quote. That means that no matter how the court gets to its number, even if it's procedurally incorrect, as long as it comes in at or below the number agreed upon by the parties, here it was 365 months, he is waiving that right to appeal. And that should end the court's inquiry in this case. None come to mind. And I have not seen a case where this court reforms a plea agreement in that way. I've seen this court unwind a plea agreement in its entirety or vacate the sentence. But none come to mind, Your Honor. And certainly not in this case. Those that do would be the constitutionally impermissible factors or a breach, something like that. But as Judge Livingston noted, mutual mistake typically, even a change in the law. No, mutual mistake is the guidelines. No, because even a change that benefits the defendant after the agreement is executed, typically is not sufficient to undermine that waiver. And here, even if we put aside the appellate waiver, of course, we would love this court to enforce it. But putting aside that, he has waived these specific claims that he's now raising. So he waived the career offender designation. He acknowledged that he was a career offender. It was in the plea agreement explicitly. It was in the colloquy. It was in the PSR. He's waived that. Same thing goes for the inclusion of the attempted criminal sale of a controlled substance. It was in the plea agreement explicitly. It was in the pre-sentence report. It was in the plea colloquy. He has waived that by not objecting to it or disputing it in any way. Same thing goes for the 851 notice, which, again, is a notice provision. He never asked for more time. He received the notice. He never asked for more time. He never objected. It was in the plea agreement explicitly. The plea colloquy. And I believe it was in the PSR. He has waived these specific claims, even if this court decides not to enforce the overall appellate waiver. And I don't think that this court even needs to get to the plain error arguments. But I do have the benefit or misfortune, depending on how you look at it, as being the attorney who briefed and argued Gibson. And this is a very live issue in this circuit of whether this court will look at the drug schedules from the time of conviction versus the time of sentencing, and especially whether the New York State definition of narcotic drug, which is different than the controlled substance that was at issue in Townsend, is categorically broader than the federal drug schedules from the federal statute. It is not settled. It is certainly not plain. And the district court should not be faulted for failing to come down on the so-called court. It was a lively argument, if I recall. Yes. Yes, it was. It was very lively, indeed. But the fact remains for this. And Gibson is different in several ways. Because in Gibson, it was argued at the district court. It was raised. It was briefed. The government lost, and the government appealed in Gibson. That's one of the rare cases where we are, in fact, the appellant there. This case, as Judge Lynch noted, this issue was not raised. It was not argued. We do not have the benefit of that district court opinion. He waived these claims explicitly. And more importantly, he waived his right to appeal. Even if, looking back, even if Gibson comes down tomorrow, he took that chance when he signed that appellate waiver provision. So unless the court has any further questions, we'd ask that this panel enforce the appellate waiver and affirm the sentence in its entirety. Thank you. In response to the question about can you imagine a situation, and I think this situation illustrates my points well. Imagine a situation in which the defendant and the government agree that the statutory maximum is 20 years, and the trial judge sentences the defendant to 15 years, and then it turns out that the statutory maximum is only five years. My sister would be before you saying, he waived that. He waived the fact that the judge can only sentence. Well, that would be an illegal sentence, right? Well, I think this is an illegal sentence in the sense. Well, in a different sense. In a different sense, yeah. That would be a sentence that the court, in fact, did not have the authority to impose, which strikes me as a different situation than an argument that the judge miscalculated the guidelines or something of the sort. Or even that the court was mistaken about what the range of sentences was that was available under the statute, but nevertheless imposed a sentence that is within the actual statutory range. Well, I'm not sure that it's so different. I mean, what I'm saying is that the judge, in being mistaken, was imposing an illegal sentence. I don't think it's all that different. It is different. I have to say it is different, but it's only a question of degree. You know, you're the appellate judges. You're the guys who have to draw that line in those gray areas. It's a gray area. Thank you, Ernest. Thank you both, and we'll take the matter under advisement.